JAYNE E. CARDIN *vs.* ROYAL INSURANCE COMPANY
OF AMERICA.

Worcester. December 5, 1984. — April 8, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH & O'CONNOR, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist, Construction of
  policy.

> Any provision in a policy of motor vehicle insurance purporting to
> exclude uninsured motorist coverage is contrary to the language and
> policy of the uninsured motor vehicle statute, G. L. c. 175, § 113L,
> and is therefore unenforceable. [452]

A plaintiff who, while a passenger in an automobile owned and operated by
  her husband, suffered personal injuries resulting in a claim against her
  husband in an amount exceeding the limits of his bodily injury insurance
  coverage and uninsured motorist coverage was entitled to recover such
  excess amount under the statutory uninsured motorist coverage provisions
  of a separate policy of insurance issued on an automobile owned by her,
  notwithstanding a provision in her policy purporting to exclude such
  recovery. [452-457]

CIVIL ACTION commenced in the Superior Court Department
on June 13, 1983.

The case was heard by *William G. Young,* J., on a statement
of agreed facts.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Gerard R. Laurence* for the defendant.

*Patrick A. Fox* for the plaintiff.

LYNCH, J. In this case, we are asked to decide the validity
of the "regular use exclusion" in the plaintiff's uninsured
motorist coverage under G. L. c. 175, § 113L.[1] The case was

---

[1] General Laws c. 175, § 113L (1), as amended by St. 1980, c. 532,
§ 1, provides: "No policy shall be issued or delivered in the commonwealth
with respect to a motor vehicle . . . registered in this state unless such
policy provides coverage in amounts or limits prescribed for bodily injury

submitted to a Superior Court judge on a statement of agreed facts, and he granted declaratory relief for the plaintiff. The defendant sought review of this decision in the Appeals Court, and we transferred the case to this court on our own motion.

The following appears from the statement of agreed facts. On January 29, 1983, the plaintiff was involved in an automobile accident on Pleasant Street in Worcester. She suffered serious physical injuries resulting in damage to her person in excess of $50,000. The plaintiff had been a passenger in a 1972 AMC Sportabout that was owned, operated, and insured by her husband, Daniel M. Cardin.

The Sportabout was insured by the defendant. Part Five of the insurance policy written for that automobile provided coverage of up to $25,000 per person for bodily injury to others resulting from an accident for which the plaintiff's husband was legally responsible. In addition, Part Seven of that policy provided coverage of up to $25,000 per person for bodily injury to the plaintiff's husband, or to any member of his household (including the plaintiff), caused by an underinsured automobile.[2] The defendant agreed to pay the plaintiff the $50,000 maximum coverage under both of these provisions.

The plaintiff owned a 1979 Chevrolet van, separately insured by the defendant under a policy that included the same underinsurance coverage. The defendant denied liability under this provision. In doing so, the defendant relied on the following exclusion of coverage contained in the plaintiff's policy: "We will not pay to or for . . . anyone injured while occupying an auto owned or regularly used by you or a household member unless a premium charge for this Part is shown for that auto on your Coverage Selections page." There was no mention of

---

or death for a liability policy under this chapter, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ." Under G. L. c. 175, § 113L (2), as amended by St. 1980, c. 532, § 2, uninsured motorists include those who are underinsured.

[2] Since the $25,000 coverage provided by Part Five of her husband's policy was insufficient to compensate the plaintiff for her injuries, her husband is considered to be underinsured. See G. L. c. 175, § 113L (2).

the 1972 Sportabout owned by the plaintiff's husband on the Coverage Selections page.

The plaintiff argues that the exclusion is contrary to the language and policy expressed by G. L. c. 175, § 113L. She also claims that in this case the exclusion fails to serve the purpose for which it was intended, and that it deprives her of the substantial economic value of her policy while conferring an unfair benefit on the defendant. We hold that any exclusion to uninsured motorist coverage is contrary to the language and policy of G. L. c. 175, § 113L, and is therefore unenforceable. Accordingly, we affirm the judgment of the Superior Court.

Navigating the tortuous twists of automobile insurance law poses a challenge at least equal to that faced by the uninitiated driver on his first foray into the streets of Boston. For this reason, it is important for us to distinguish what this case does and does not involve. Unlike automobile *liability* insurance, uninsured motorist coverage is not restricted by statute to situations "arising out of the ownership, operation, maintenance, control or use" of the insured motor vehicle. See G. L. c. 90, § 34A. The statute therefore does not limit her recovery to situations involving the motor vehicle she has insured. Instead, uninsured motorist coverage insures persons, wherever they may be, when and if they are injured by an uninsured motorist. As one court has aptly summarized: "[T]he uninsured motorists coverage was applicable if, at the time of sustaining injury, [the plaintiff] . . . was occupying the [automobile] described in his policy, or was on foot, or on horseback, or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile furnished for his regular use . . . . This so-called uninsured protection is limited personal accident insurance chiefly for the benefit of the named insured." *Motorists Mut. Ins. Co.* v. *Bittler,* 14 Ohio Misc. 23, 32-33 (1968). In accord, see, e.g., *Harvey* v. *Travelers Indem. Co.,* 188 Conn. 245, 250 (1982); *Otto* v. *Farmers Ins. Co.,* 558 S.W.2d 713, 718 (Mo. Ct. App. 1977); *Fernandez* v. *Selected Risks Ins.*

*Co.,* 82 N.J. 236, 241-242 (1980); *Hogan* v. *Home Ins. Co.,* 260 S.C. 157, 162 (1973).[3]

In addition, the rule that ambiguous policy language will be construed against the insurer has no application here.[4] See *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). The plaintiff admits that the exclusionary language is explicit and unambiguous. Normally, when there is no ambiguity, we will construe the words of an insurance policy according to their ordinary meaning. *Royal-Globe Ins. Co.* v. *Schultz,* 385 Mass. 1013 (1982). This is consistent with our long-standing policy that the rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract. *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.,* 359 Mass. 221, 226 (1971). See *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.,* 131 Mass. 164, 165 (1881). But this is not a typical arms' length contract; it is one mandated by statute and reduced to a form standardized across the Commonwealth, allowing the prospective purchaser little or no opportunity to alter its terms or to secure more favorable terms from another insurer. In this context, it is clear that "[t]he policies underlying the principle of private autonomy . . . do not apply." Dugan, The Application of Substantive Unconscionability to Standardized Terms — A Systematic Approach, 18 New Eng. L. Rev. 77, 78-79 (1982). Therefore, no matter how explicit the exclusionary language may be, it cannot prevail if it is contrary to the statutory language or the legislative policy of G. L. c. 175, § 113L. See *Surrey* v. *Lumbermens Mut. Casualty Co.,* 384 Mass. 171,

---

[3] In *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 89 n.6 (1977), this court stated that if the plaintiff in that case was entitled to coverage under more than one policy, "each . . . *vehicle* would be entitled to additional uninsured motorist protection without any additional cost" (emphasis added). That statement was not intended to be determinative of the manner in which uninsured and underinsured motorist coverages are designed to function.

[4] We express no view whether this rule retains its validity in circumstances where the Commissioner of Insurance drafts the contested language and mandates its inclusion in the policy. See, e.g., *Lumbermens Mut. Casualty Co.* v. *DeCenzo,* 18 Mass. App. Ct. 973, 975 (1984).

173 (1981); *Johnson* v. *Travelers Indem. Co.,* 359 Mass. 525, 528 (1971). As this court has held in a similar context: "The well settled principles covering the interpretation of an ordinary policy of insurance have been properly disregarded in determining the scope and extent of a compulsory motor vehicle policy in order to accomplish the legislative aim of providing compensation to those who have been injured by automobiles." *Desmarais* v. *Standard Accident Ins. Co.,* 331 Mass. 199, 202 (1954). We therefore turn to an analysis of the statute and its purpose.

As we have recently stated, "Our task is to interpret the statute according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Glasser* v. *Director of the Div. of Employment Sec.,* 393 Mass. 574, 577 (1984). The aim of G. L. c. 175, § 113L, is "to minimize the possibility of . . . catastrophic financial loss [to] the victims of an automobile accident." 1968 Senate Doc. No. 1030, at 7. Another way of stating this policy is that the law is designed "to protect [the] public from injury caused by motorists who could not make the injured party whole," subject, of course, to the limits provided in the insured's policies. *Surrey* v. *Lumbermens Mut. Casualty Co., supra* at 177. See also *Harvey* v. *Travelers Indem. Co.,* 188 Conn. 245, 249 (1982); *Descoteaux* v. *Liberty Mut. Ins. Co.,* 125 N.H. 38, 44 (1984). While the Legislature has set minimum coverage limits of "at least" $10,000 per person per accident, that does not mean that the legislative purpose has been met whenever that person receives the statutory minimum, regardless of her actual damages.[5]

_____
[5] In *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 89 (1977), this court viewed the legislative purpose as met when minimum coverage was available to the injured party. Since that time, however, it is clear that the legislative purpose has become broader. In St. 1973, c. 380, the Legislature amended § 113L to provide for the optional purchase of underinsurance coverage, which would pay the insured whenever the tortfeasor's coverage was insufficient to satisfy the *actual damages* of the injured person, not merely insufficient to meet the statutory minimum coverage. This amendment had not taken effect at the time the accident giving rise to the *Blakely* case occurred. Section 113L was further amended by St. 1980, c. 532, to make underinsured coverage mandatory.

The statutory language unequivocally commands that no policy shall be issued without uninsured motorist coverage. The only limits on this coverage which the statute comprehends are that the insured be legally entitled to recover damages, that the tortfeasor be uninsured or underinsured, and that payment not exceed the monetary limit of the insured's policy. The statute does not refer to exclusions at all, and we will not sanction reductions in coverage for which the Legislature has not provided. Compare Cal. Ins. Code § 11580.2 (West Supp. 1985). To do so would be "wholly inconsistent" with the broad remedial purpose of the statute, and would "permit the insurer to evade mandated coverage by erecting an artificial, arbitrary barrier to recovery." *Surrey* v. *Lumbermens Mut. Casualty Co., supra* at 177. The broad language and purpose of the statute are not to be "whittled away by a myriad of legal niceties arising from exclusionary clauses." *Touchette* v. *Northwestern Mut. Ins. Co.,* 80 Wash. 2d 327, 335 (1972).

This view is consistent with decisions in many other jurisdictions interpreting exclusions to uninsured motorist coverage. See, e.g., *Alabama Farm Bur. Mut. Casualty Ins. Co.* v. *Mitchell,* 373 So.2d 1129, 1131-1135 (Ala. Civ. App. 1979); *Harvey* v. *Travelers Indem. Co.,* 188 Conn. 245, 249-253 (1982); *Kau* v. *State Farm Mut. Auto. Ins. Co.,* 58 Hawaii 49, 50-51 (1977); *State Farm Mut. Auto. Ins. Co.* v. *Robertson,* 156 Ind. App. 149, 152-154 (1973); *Nygaard* v. *State Farm Mut. Auto. Ins. Co.,* 301 Minn. 10, 18-19 (1974); *State Farm Mut. Auto. Ins. Co.* v. *Hinkel,* 87 Nev. 478, 481-482 (1971); *Bell* v. *State Farm Mut. Auto. Ins. Co.,* 157 W. Va. 623, 627 (1974). This is also true in States whose statutes provide for approval by the equivalent of our Commissioner of Insurance. See, e.g., *Chavez* v. *State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 329-330 (1975); *Beek* v. *Ohio Casualty Ins. Co.,* 135 N.J. Super. 1 (1975), aff'd, 73 N.J. 185 (1977).[6]

---

[6] Courts in many other jurisdictions have struck down exclusions to uninsured motorist coverage regardless of their reasonableness. However, some courts have upheld them in situations where at least the policy underlying

We recognize that the effect of our decision will be to allow insured motorists to "stack" their uninsured motorist coverage.[7] We conclude that the propriety of stacking is a policy decision best left to the Legislature, and that the strict command of the statute precludes the insurer's attempt to avoid stacking uninsured motorist coverage.[8] This court's decision in *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 89 (1977), which may suggest a different result, applied to an earlier version of the statute. See note 5, *supra.*

The defendant nevertheless points out that the Legislature delegated to the Commissioner of Insurance the authority to interpret the scope of G. L. c. 175, § 113L. See *Royal Indem. Co.* v. *Blakely, supra* at 90. Therefore, since the Commissioner of Insurance approved the policy containing the exclusion, it is argued that the exclusion must be enforceable. But the Legislature did not intend to insulate the Commissioner's actions from judicial review. See G. L. c. 175, § 113A. While we will not lightly second-guess the Commissioner's interpretation of the statute, his approval is "hardly persuasive" where the

---

the regular use exclusion was applicable, for example, where the insured uses two or more automobiles but insures only one. See, e.g., *Rodriquez* v. *Maryland Indem. Ins. Co.,* 24 Ariz. App. 392, 394 (1975); *Holcomb* v. *Farmers ·Ins. Exch.,* 254 Ark. 514, 522 (1973); *Beliveau* v. *Norfolk & Dedham Mut. Fire Ins. Co.,* 120 N.H. 73, 74 (1980); *Employers' Fire Ins. Co.* v. *Baker,* 119 R.I. 734, 735-736 (1978). Few courts have upheld such an exclusion in circumstances similar to this case; that is, when the purpose meant to be served by the exclusion is clearly inapplicable. But see, e.g., *Arguello* v. *State Farm Mut. Auto. Ins. Co.,* 42 Colo. App. 372 (1979). The court in *Arguello* relied on legislative policy similar to that outlined in *Blakely* which, as we have held above, is no longer consistent with recent legislative action. See note 5, *supra.*

We also reject as an inappropriate intrusion into the legislative function the idea that we should enforce exclusions which may appeal to us as reasonable or appropriate in a given instance. See *MFA Ins. Cos.* v. *Whitlock,* 572 S.W.2d 856, 857 (Ky. 1978).

[7] "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." 12A M.S. Rhodes, Couch's Cyclopedia of Insurance Law § 45:651, at 207 (2d ed. rev. 1981).

[8] We express no view as to the merits of stacking coverages other than those relating to uninsured motorists.

exclusion violates the language and policy of the statute. *Surrey* v. *Lumbermens Mut. Casualty Co., supra* at 178, quoting *State Farm Mut. Auto. Ins. Co.* v. *Maryland Auto. Ins. Fund,* 277 Md. 602, 606 (1976). See, e.g., *Sullivan* v. *Doe,* 159 Mont. 50, 61 (1972); *Motor Club of Am. Ins. Co.* v. *Phillips,* 66 N.J. 277, 286 (1974); *Chavez* v. *State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 329 (1975); *American Liberty Ins. Co.* v. *Ranzau,* 481 S.W.2d 793, 796-797 (Tex. 1972). *Siegel* v. *American Interstate Ins. Corp.,* 72 Wisc.2d 522, 530 (1976).

Therefore, we hold that any policy exclusion to uninsured motorist coverage is unenforceable in light of the Legislature's decision not to sanction such exclusions in the statute. For that reason, we affirm the declaratory judgment of the Superior Court.[9]

*Judgment affirmed.*

---

[9] Having found that the exclusion is unenforceable, we do not decide whether application of the exclusion to this case would render the plaintiff's uninsured motorist coverage of no substantial economic value. See *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 148-151 (1982).