Lumbermens Mutual Casualty Company *vs.* Robert A. DeCenzo, individually and as administrator.[1]

Middlesex.　November 4, 1985. — February 6, 1986.

Present: Hennessey, C.J., Wilkins, Abrams, & Lynch, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist.

Where each of three automobile insurance policies issued by an insurance company to a policyholder provided for underinsured motorist coverage and contained language stating that, if two or more policies issued by the insurer covered the same accident, "the most we will ordinarily pay is the highest dollar limit in any one policy," and where the accident for which the policyholder was claiming underinsured motorist benefits occurred before the amendment of G. L. c. 175, § 113L, by St. 1980, § 532, making underinsured motorist coverage mandatory, the policyholder's recovery was limited to the highest amount of underinsured coverage in any one policy. [694-695]

Civil action commenced in the Superior Court Department on October 1, 1980.

The case was heard by *John Paul Sullivan, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul D. DeCenzo* for the defendant.

*D. Alice Olsen* for the plaintiff.

Lynch, J. In this case we consider whether an insured may "stack" optional underinsured motorist benefits under separate policies covering each of the insured's three automobiles. The plaintiff sought a declaration pursuant to G. L. c. 231A of the amount of underinsured motorist benefits available to Robert A. DeCenzo due to the death of his son, Ward R. DeCenzo. A Superior Court judge ruled that DeCenzo's benefits were limited to the highest amount of underinsured coverage in any

---

[1] Of the estate of his son.

one policy. The Appeals Court affirmed. *Lumbermens Mut. Casualty Co.* v. *DeCenzo,* 18 Mass. App. Ct. 973 (1984). We allowed the defendant's application for further appellate review, and we also affirm.

In February of 1979, DeCenzo's son was fatally injured while a passenger in an automobile which was within the policy definition of an underinsured motor vehicle. At that time, each of DeCenzo's three family automobiles was covered by a separate Massachusetts automobile insurance policy issued by Lumbermens Mutual Casualty Co. (Lumbermens). Each policy provided optional underinsured coverage of up to $25,000 per person for the policyholder and members of his household.[2] DeCenzo paid separate $14 premiums under each of these three policies for this coverage. DeCenzo applied to Lumbermens for $75,000, the total maximum underinsured motorist benefits under the three policies. At the time of the accident, two forms of automobile insurance policies existed, a 1978 version and a 1979 version, both containing an "anti-stacking" provision pertaining to covering underinsurance benefits. Clause 6 of the 1978 version provides: "[s]ometimes two or more auto policies cover the same accident. If all the policies are with us, the most we will ordinarily pay is the highest dollar limit in any one policy."[3]

On appeal to this court, DeCenzo relies heavily on *Cardin* v. *Royal Ins. Co.,* 394 Mass. 450 (1985), which was not decided until after the Appeals Court rendered its decision. In *Cardin* we examined the validity under G. L. c. 175, § 113L, of the "regular use exlusion" in the plaintiff's uninsured

---

[2] DeCenzo's son was a member of his household.

[3] Clause 6 in the 1979 version provides, "You may have two or more auto policies with us covering the same claim. In that case, the most we will pay is the highest amount payable under the applicable coverage in any one of these policies."

At trial there was a dispute as to whether DeCenzo knew of the terms of the 1979 version of the policy before the accident occurred. The judge did not resolve the question of which version of the policy governed, as he ruled that even under the 1978 language, which was less favorable to Lumbermens than the 1979 version, DeCenzo could only recover $25,000. At oral argument before this court, counsel for the insurer stated that Lumbermens is now willing to rely on the 1978 policy. Accordingly, discussion of the language of clause 6 hereinafter refers to the quoted text of the 1978 policy.

motorist coverage and held that "any exclusion to uninsured motorist coverage is contrary to the language and policy of [that statute] and is therefore unenforceable." *Id.* at 452. We also stated that "[w]e recognize that the effect of our decision will be to allow insured motorists to 'stack' their uninsured motorist coverage." *Id.* at 456. DeCenzo argues that *Cardin* is dispositive of his case, suggesting that the "anti-stacking" provisions covering underinsured motorist benefits in his motor vehicle liability policies therefore contravene G. L. c. 175, § 113L, and so may not be given effect. See *Surrey* v. *Lumbermens Mut. Casualty Co.,* 384 Mass. 171, 173 (1981). We disagree.

Our decision in *Cardin* was compelled by our analysis of the language and policy of G. L. c. 175, § 113L, in existence in 1983. See, e.g., *id.* at 456 ("We conclude that the propriety of stacking is a policy decision best left to the Legislature, and that the strict command of the statute precludes the insurer's attempt to avoid stacking uninsured motorist coverage"), and *id.* at 455 ("The statute does not refer to exclusions at all" and to sanction reductions in coverage would be " 'wholly inconsistent' with the broad remedial purpose of the statute"). DeCenzo's son's accident, however, occurred in 1979. Both the language and the policy of G. L. c. 175, § 113L, which compelled the result in *Cardin,* were different in 1979. Most significantly, underinsured motorist coverage in 1979 was *optional.* G. L. c. 175, § 113L (1), as amended by St. 1973, c. 380. As we noted in *Cardin,* such coverage was mandatory in 1983. *Id.* at 457 n.5. G. L. c. 175, § 113L, as amended through St. 1980, c. 532, § 1. The compulsory nature of underinsurance coverage in 1983 was essential to our reasoning in *Cardin.* See *id.* at 454-455. An additional indication of a broadening of legislative purpose between 1979 and 1983, relative to underinsured motorist coverage, is the fact that the definition of "uninsured motor vehicle coverage" was expanded to include underinsured motorists. G. L. c. 175, § 113L (2), as amended through St. 1980, c. 532, § 2. See also *Cardin, supra* at 451 n.1. In 1983, insurers were required to make an offer of additional *under*insured motorist coverage of $15,000 per person

and $40,000 per accident. See G. L. c. 175, § 113C, as amended through St. 1971, c. 520, § 1. In 1979, no insurer was required to make optional underinsured motorist coverage available in amounts greater than $5,000 per person or $10,000 per accident. G. L. c. 175, § 113L, as amended by St. 1973, c. 380; G. L. c. 90, § 34A, sixth par., as amended through St. 1976, c. 266, § 6.

In view of the above it is apparent that our refusal in *Cardin, supra* at 455, to "sanction reductions in coverage for which the Legislature has not provided," has no application to the case at bar. In 1979, legislative policy did not invalidate reductions or limitations on underinsured motorist coverage. See *Royal-Globe Ins. Co.* v. *Schultz,* 385 Mass. 1013 (1982) (upholds a "regular use exclusion" barring recovery of optional underinsured motorist benefits for a 1978 accident).

The defendant's coverage is determined by the terms of his policy and is therefore limited to the highest amount in any one policy unless one of his other arguments prevails. He argues that the "anti-stacking" language of clause 6 does not apply because all the policies covering the accident were not with Lumbermens. Finally, he contends that the separate premiums paid for underinsured motorist coverage under each policy entitle him to a multiple recovery. For the reasons stated in the Appeals Court opinion these arguments do not prevail. *Lumbermens Mut. Casualty Co.* v. *DeCenzo, supra* at 974-975.

*Judgment affirmed.*