Botsford, J.
The plaintiff Jayne Marzano claims in this action that she is entitled to uninsured and underinsured benefits under an automobile insurance policy issued to Marzano by the defendant Metropolitan Property and Casualty Insurance Company (Metropolitan). Metropolitan has filed a counterclaim in which it seeks a declaration that the policy does not afford uninsured or underinsured insurance coverage to Marzano. Presently before the court is Metropolitan’s motion for summary judgment on its claim of no uninsurance coverage. For the reasons discussed below, Metropolitan’s motion is allowed.
Background
The following facts are undisputed for purposes of this motion. On March 21, 1995, Marzano was traveling as a passenger in the front seat of a rental car driven by her friend, the defendant Fred Elacqua, in Miami, Florida. The two were on vacation at the time. Marzano was injured when four youths who were standing on the street (and not in a vehicle) threw an object through the apparently closed passenger window of the rental car. The object caused the window glass to shatter and fall over Marzano, and then came to rest on the floor in front of the front passenger seat. The object turned out to be a brown paper bag enclosing pieces of a brick or cinder block. Elacqua drove quickly and suddenly away from the scene after the bag had been thrown, and Marzano sustained whiplash neck injuries as a result. She also suffered lacerations and scars from the broken pieces of glass which had shattered over her. Her medical bills for the injuries came to $2,967.00, and her lost wages were $166.16.
At the time of this incident, Marzano was insured under a standard Massachusetts automobile insurance policy issued by Metropolitan. The policy provides up to $8,000.00 in personal injury protection (PIP) benefits, and at some point after March 1995, Metropolitan paid Marzano PIP benefits in the amount of $3000.00. The policy also affords uninsured motorist coverage with limits of $20,000 per person and $40,000 per accident, as well as underinsured coverage with the same limits. Elacqua was insured under a standard Massachusetts automobile police issued by Plymouth Rock. In addition, Avis Rent-a-Car had coverage of $10,000 per person and $20,000 per occurrence.
Presently at issue is Marzano’s claim for uninsurance benefits from Metropolitan, the claim apparently premised on the fact that the youths who threw the bag-with-rock were “uninsured tortfeasors.” At an earlier point in the proceedings the parties went to arbitration over whether Marzano was entitled to recover any underinsurance benefits on the grounds that the available coverage from Elacqua was insufficient to compensate Marzano for her injuries. The issue at arbitration was apparently whether Elacqua was negligent in the manner he operated the rental car on the date in question, and if so, the amount of Marzano’s damages. The arbitration ended with a determination that Marzano was not entitled to recover underinsurance benefits.[2]
*645 Discussion
As indicated above, there are no material issues of fact in dispute for purposes of considering Metropolitan’s summary judgment motion. The application of insurance policy language to undisputed facts presents a question of law for the court. Massachusetts Bay Transportation Auth’y v. Allianz Ins. Co., 413 Mass. 473, 476 (1992). See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982). Where the relevant language of a policy is unambiguous, the court should construe that language according to its plain and ordinary meaning. Cardin v. Royal Ins. Co., 394 Mass. 450, 476 (1985). See Cody, supra, 387 Mass. at 146.
Metropolitan’s contention that no uninsurance coverage is provided in this case rests on the language of its policy. Accordingly, it is useful to begin with the relevant policy provisions.
As it states at the outset, the Metropolitan policy “only covers accidents and losses which result from the ownership, maintenance or use of autos." (Policy, p. 3 (“Our Agreement”].) The specific policy provision governing uninsurance coverage provides as follows:
Sometimes an owner or operator of an auto legally responsible for an accident is uninsured. Some accidents involve unidentified hit-and-run autos. Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos. We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured or hit-and-run auto. We will pay for hit-and-run accidents only if the owner or operator causing the accident cannot be identified . . .
(Policy, pp. 7-8 “[Part 3. Bodily Injury Caused by An Uninsured Auto].”)
Metropolitan argues that the policy language quoted here precludes Marzano from receiving any uninsured benefits for two reasons: (1) Marzano’s injuries did not arise out of the ownership, maintenance or use of an automobile; and (2) the injuries were not caused by the owner or operator or an uninsured or hit-and-run auto. Because I agree with the second argument, it is not necessary to decide the first.[3]
The language of the Metropolitan policy pertaining to uninsured coverage is unambiguous. The commitment is to pay for injuries caused by “uninsured or hit-and-run autos” (emphasis supplied). This language essentially tracks the compulsory uninsurance statute, G.L.c. 175, §113L, which provides in pertinent part:
(1) No policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . unless such policy provides coverage ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and hit- and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom . . .
(Emphasis supplied.) No one disputes that the young persons who threw the rock or block at the Elacqua rental car were not operating a motor vehicle at the time; they were pedestrians. Since this is the case, the injuries Marzano sustained simply do not fit within the scope of the coverage provided.
Marzano argues that the policy language in question should not be interpreted in this way because the purpose of the compulsory uninsurance statute is to provide available compensation for injury caused by a “tortfeasor who is uninsured.” Surrey v. Lumbermens Mut. Cas. Co., 384 Mass. 171, 173 (1981). The contention goes too far. As the language of c. 175, §113L quoted above demonstrates, the statute requires coverage for injuries caused by tortfeasors, but only those tortfeasors whose conduct involves the ownership or operation of a motor vehicle. The plain and clear language of both the uninsurance statute and the uninsurance provisions of the Metropolitan policy cannot and should not be stretched beyond the point of recognition to include uninsurance coverage for injuries caused by pedestrians whose tortious conduct is not connected at all with their operation or ownership of an automobile. See Santos v. Lumbermens Mut. Cas. Co., 408 Mass. 70, 85 (1990) (G.L.c. 175, §113L “does not, and was not intended to, provide protection against uninsured or underinsured nonmotorist tort-feasors") (emphasis in original).[4]
Marzano also contends that Metropolitan should be estopped from denying uninsurance coverage because it paid PIP benefits to her after the accident. The argument fails. The relevant policy provisions relating to PIP benefits are the following:
The benefits under this Part are commonly known as “PIP” or “No-Fault” benefits. It makes no difference who is legally responsible for the accident.
We will pay the benefits described below to you and other people injured or killed in auto accidents. For any one accident, we will pay as many people who are injured, but the most we will pay for injuries to any one person is $8,000 . . .
We will pay PIP benefits to or for:
2. You ... , if injured while occupying an auto which does not have Massachusetts Compulsory Insurance or if struck by an auto which does not have Massachusetts Compulsory Insurance . . .
(Policy, p. 5 [Part 2. Personal Injury Protection]; emphasis in original.) The term “accident” is defined in the policy as “an unexpected, unintended event that causes bodily injury or property damage arising out of *646 the ownership, maintenance or use of an auto”; the term “occupying" is defined as “in, upon, entering into, or getting out of." (Policy, pp. 2, 3 [Definitions].)
Application of these provisions to the facts in this case suggests that Metropolitan was essentially obligated to provide Marzano with PIP benefits. As noted above (see n. 3), it is reasonable to assume that the events giving rise to Marzano’s injuries arose out of the “use” of the rental car driven by Elacqua, and certainly what occurred in terms of the rock or block being thrown through the window of the car was an unexpected, unintended (by Marzano and Elacqua) event which caused bodily injury as well as property damage. Thus, an auto “accident” occurred, and it did so while Marzano was in, or occupying, an auto. Since fault is not an issue for PIP benefits, the fact that the accident and related injuries may have been caused by pedestrians was irrelevant.
The policy provisions defining and governing uninsurance coverage are very different. Where uninsurance benefits are concerned, an “accident” must also be involved, but the accident must have been caused by the owner or operator of an uninsured or hit-and-run automobile. In other words, the focus of inquiry under the uninsurance benefits section of the policy extends beyond simply the need for an automobile “accident” causing injuries or property damage— which is the entire framework for considering PIP benefits — to encompass consideration of whether (1) the “accident” was caused by an uninsured or hit-and-run auto, and (2) the owner or operator of that auto is legally responsible for the injuries (i.e., at fault). Here, these additional conditions precedent to coverage were not met. Accordingly, there is nothing about Metropolitan’s payment of PIP benefits that appears inconsistent with its denial of uninsurance coverage. In any event, Metropolitan’s payment of PIP benefits would not constitute a waiver or estoppel in relation to Metropolitan’s denial of uninsurance benefits, where, as here, Marzano did not change her position to her detriment in reliance on the receipt of PIP benefits. Cf. Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 635 (1992) (denial of insurance claim on one ground does not imply waiver of other possible grounds of denial, nor does it estop insurer from asserting a different ground at a later time if no harmful change in position exists).
ORDER
For the foregoing reasons, the motion for summary judgment of Metropolitan Property and Casualty Insurance Company is allowed.

 No arbitration award appears to be in the record, and the actual grounds of the arbitration decision are not provided. I infer, perhaps incorrectly, that it was based on a finding that Elacqua was not negligent. I have no information about the status of Marzano’s direct claim in this action against Elacqua.

 Nevertheless, there is reason to find that Marzano’s injuries did arise out of the “use” of an automobile in this case. The injuries were caused by (1) the manner in which Elacqua drove the rental car when he was trying to get away from a dangerous situation, and (2) glass shattering over Marzano from the car’s broken window; the thrown rock or cinder block itself did not touch her. Certainly there is a causal relationship between the “use” of the automobile and these particular injuries. See Sabatinelli v. Travelers Ins. Co., 369 Mass. 674, 677 (1976); Assetta v. Safety Ins. Co., 43 Mass.App.Ct. 317, 319 (1997), and cases cited.

 Nile cases relied on by Marzano do not support her uninsured pedestrian claim. All of them involve injuries caused by motorists. See Cardin v. Royal Ins. Co., 394 Mass. 450, 454 (1985) (injury caused by uninsured motorist); Surrey v. Lumbermens Mut. Cas. Co., 384 Mass. 171, 173 (1981) (hit-and-run accident involving two autos); Assetta v. Safety Ins. Co., supra, 43 Mass.App.Ct. at 319 (plaintiff pedestrian seeking coverage after being hit by object thrown out of moving vehicle). See also National American Ins. Co. v. Insurance Co. of N. America, 74 Cal.App. 3d 565 (1st Dist. 1977) (injury caused by motorist throwing egg at pedestrian); Valdes v. Smalley, 308 So. 2d 342 (Fla.App. 1974) (injury caused by passenger in auto who threw glass mug at pedestrian).