DANIELLE L. CHENARD *vs.* COMMERCE INSURANCE COMPANY
& another.[1]

No. 01-P-27.

Essex. June 5, 2002. - November 25, 2002.

Present: BROWN, RAPOZA, & COHEN, JJ.

Further appellate review granted, 438 Mass. 1108 (2003).

*Insurance,* Motor vehicle insurance, Uninsured motorist, Construction of
policy, Insured. *Motor Vehicle,* Insurance.

This court concluded that, pursuant to the "anti-stacking" amendment to G. L.
c. 175, § 113L, enacted by the Automobile Insurance Reform Act of 1988,
St. 1988, c. 273, § 47, the policy to which a household member of a
named insured could turn for uninsured motorist benefits on account of
injuries sustained by the household member when the vehicle she was
driving, which belonged to her mother, was struck by an uninsured vehicle,
was the policy providing the higher limits of the two automobile insurance
policies issued to the household. [580-583]

CIVIL ACTION commenced in the Superior Court Department on
September 30, 1998.

Motions for summary judgment were heard by *Diane M.
Kottmyer,* J., on a statement of agreed facts.

*John P. Graceffa* for CNA Insurance Companies.

*Peter M. Goldberg* for the plaintiff.

*John G. Ryan* for Commerce Insurance Company.

COHEN, J. In this appeal, we are called upon to examine the
relationship between the scope of uninsured motorist coverage
provided by the Sixth Edition standard Massachusetts automo-
bile policy to household members of the named insured, and the
statute that mandates such coverage, G. L. c. 175, § 113L. The
issue arises in the context of a declaratory judgment action
brought by Danielle Chenard to establish which of two
companies providing automobile insurance to her mother is

---

[1] CNA Insurance Companies, also known as American Casualty Company.

responsible for the payment of uninsured motorist benefits on account of injuries sustained by Danielle when the vehicle she was driving, which belonged to her mother, was struck by an uninsured auto.

Both insurers, Commerce Insurance Company (Commerce) and CNA Insurance Companies (CNA), asserted counterclaims and cross-claims denying coverage and pointing to each other as the responsible carrier. A Superior Court judge heard the parties' cross-motions for summary judgment on a statement of agreed facts, and ruled that coverage obtained under CNA's policy. We reach a different conclusion, holding that, pursuant to the "anti-stacking" amendment to G. L. c. 175, § 113L, enacted by the Automobile Insurance Reform Act of 1988, St. 1988, c. 273, § 47, Commerce is the designated provider of uninsured motorist benefits to Danielle in the circumstances of this case.

The parties' statement of agreed facts established that on the date of the accident, November 16, 1994, Danielle lived in the household of her mother, Eunice Chenard. At that time, Eunice owned two motor vehicles: a pickup truck insured under a policy issued by Commerce and having limits under Part 3 — Bodily Injury Caused by an Uninsured Auto — of $250,000 per person and $500,000 per accident; and a sedan insured under a policy issued by CNA and having Part 3 limits of $100,000 per person and $300,000 per accident. Both policies were standard Massachusetts automobile insurance policies in the Sixth Edition form promulgated effective January, 1993. Danielle was driving the sedan insured by CNA when it was struck by an uninsured vehicle.

Part 3 of the Sixth Edition policy designates four categories of individuals to whom the insurer will provide uninsured motorist benefits: the named insured; household members of the named insured (but with restrictions discussed below); any other occupant of the insured vehicle, but only if the occupant lacks recourse to a policy of his own or of a household member; and individuals entitled to recover because of injuries to one of the foregoing covered persons. In this instance, Danielle's entitlement to Part 3 benefits derives from her status as a member of a named insured's household. Thus, the specific Part 3 language in play is the insurer's agreement to pay damages to:

"*Any household member, while occupying your auto, while occupying an auto not owned by you or if injured as a pedestrian.* If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share. We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own or who is covered by any Massachusetts auto policy of another household member providing uninsured auto insurance with higher limits." (Emphasis supplied.)

When read together with the definitions section of the policy, the coverage for household members is not unqualified. It is restricted to situations where the claimant is either (1) occupying "your auto" — defined as the vehicle designated on the Coverage Selections Page; (2) occupying an auto not owned by "you," the named insured; or (3) injured as a pedestrian. In reliance upon these limitations, Commerce contends that Danielle is not entitled to uninsured motorist benefits under its policy, because, at the time of the accident, she was not occupying the designated insured vehicle under the Commerce policy (Eunice's pickup truck); was not occupying "an auto not owned by" the named insured, Eunice, because the sedan driven by Danielle at the time of the accident also belonged to Eunice; and was not a pedestrian.

According to Commerce, the purpose of these restrictions on coverage for household members is to prevent "manipulation" by policyholders. Commerce claims that it is unfair to the insurer if an owner can "grant access to the highest limits under any policy in the household to resident relatives occupying a vehicle that [the] owner has intentionally insured at lesser limits than those purchased on the vehicle the insured habitually occupies." Commerce acknowledges, however, that, under the terms of the policy, if the pickup truck had been insured by a member of the Chenard household other than Eunice or herself, Danielle would have been entitled to obtain the higher coverage of the policy insuring the pickup truck, notwithstanding her operation of the sedan, because she would have been a household member without a policy of her own, who was oc-

cupying an auto not owned by Commerce's named insured. Thus, Part 3 plainly contemplates that families may protect household members who are not named insureds from the risk of being injured by an uninsured motorist by purchasing, at an appropriate premium, higher limits of uninsured motorist coverage on only one of multiple family vehicles.

Regardless of the soundness of the rationale offered by Commerce for the policy limitations in question, the policy language is not the only consideration. The entitlement of a household member who is not a named insured to uninsured motorist benefits when there are multiple household auto policies also is specifically addressed by statute. Paragraph (5) of G. L. c. 175, § 113L, the anti-stacking amendment added by Section 47 of the Automobile Insurance Reform Act of 1988, St. 1988, c. 273, states in pertinent part:

> "Uninsured motorist coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together[,] combined or stacked to determine the limits of insurance coverage available to injured persons. *An insured who is not a named insured on any policy providing uninsured motorist coverage may recover only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident*; provided, however, if there are two or more such policies which provide such coverage at the same limits a pro rata contribution will be made."[2] (Emphasis supplied.)

Danielle and CNA contend that paragraph (5) reflects the Legislature's intention that any claimant who does not have his or her own auto policy, but who resides with one or more relatives who have such policies, is to obtain uninsured motorist benefits from whatever household policy has the highest limits of coverage, without regard to whether that policy was issued

---

[2]Paragraph (5) continues with language designating the single policy from which other categories of persons entitled to uninsured coverage (occupants and named insureds) may recover, depending upon the circumstances.

for the vehicle involved in the accident. They further contend that, to the extent that Part 3 of the standard policy purports to dictate a different result in the circumstances of this case, the policy impermissibly conflicts with the statute.

Commerce rejoins by maintaining that the statute speaks only of the entitlement of an "insured," and that whether a claimant is an "insured" must be determined with reference to the applicable insurance policy. According to Commerce, because of the Part 3 qualifications on coverage for household members, Danielle is not an "insured," and the Commerce policy is not one "providing uninsured motorist coverage" to her. We think, however, that Commerce's argument that the word "insured" as used in the statute derives its meaning from the terms of the policy begs the question whether the policy is inconsistent with the intent of the statute.

Particularly when the anti-stacking provision is viewed in its historical context and "in light of the aim of the Legislature," see *Sullivan.* v. *Brookline*, 435 Mass. 353, 360 (2001), a sounder reading of paragraph (5) is that the term "insured" simply refers to any individual within the class of persons intended by the Legislature to have the benefit of uninsured motorist coverage, including persons like Danielle, who are household members of a named insured.[3] See *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 526 (1991) ("it is clear that the Legislature intended to include members of the insured party's household under this coverage when it passed G. L. c. 175, § 113L"). Construed in this fashion, paragraph (5) applies to Danielle and directs that she obtain the higher coverage of the Commerce policy.

This interpretation is in keeping with the purpose of this provision. Paragraph (5) was enacted in reaction to the byzantine rules relating to the "stacking" of uninsured and underinsured motorist benefits that evolved in the wake of *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450 (1985) (*Cardin*).

---

[3]Throughout the country, persons covered by this insurance product typically include named insureds identified in the policy declarations and, while residents of the same household, the spouse and relatives of named insureds. See 1 Widiss, Uninsured and Underinsured Motorist Insurance § 4.1 (2d ed. rev. 1999).

When *Cardin* was decided, both uninsured and underinsured motorist benefits were compulsory.[4] The standard Massachusetts auto policy provided uninsured and underinsured benefits to, among others, the named insured or any member of his or her household. Although the qualifications to household member coverage contained in the Sixth Edition policy did not exist at that time, uninsured motorist coverage was then subject to the so-called "regular use exclusion." This exclusion denied coverage to "anyone injured while occupying an auto owned or regularly used by you or a household member unless a premium charge for this Part is shown for that auto on your Coverage Selections page." *Id.* at 451. Holding that any exclusions to uninsured and underinsured motorist coverage were contrary to the language and policy of G. L. c. 175, § 113L, as it was then written, the Supreme Judicial Court in *Cardin* refused to enforce the regular use exclusion, thus allowing the claimant to receive underinsured motorist benefits from two household policies — one issued to her and one issued to her husband. *Id.* at 457.

Thereafter, a series of cases distinguished and limited *Cardin*. In *Lumbermens Mut. Cas. Co.* v. *DeCenzo*, 396 Mass. 692 (1986), the injured claimant resided in a household with three vehicles carrying underinsured motorist coverage. Because pre-1980 policies were involved, and the underinsured coverage provided therein was not then compulsory,[5] the Supreme Judicial Court enforced an anti-stacking provision in the policy, noting that it was the compulsory nature of underinsurance that was essential to its reasoning in *Cardin*. *Id.* at 695. The following year, in *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259 (1987), a household member attempted to obtain uninsured motorist benefits from two household policies, each having coverage of $100,000. The Supreme Judicial Court qualified *Cardin*, holding that the regular use exclusion retained its validity as to amounts in excess of the first $25,000 of coverage, because only the first $25,000 of coverage was mandatory ($10,000 was the compul-

[4]Underinsured coverage was made compulsory and the equivalent of uninsured coverage by a 1980 amendment to G. L. c. 175, § 113L, St. 1980, c. 532, § 2. Subsequently, as a result of the Automobile Insurance Reform Act of 1988, underinsured coverage again was made optional as of January 1, 1989. See G. L. c. 175, § 113L, as amended by St. 1988, c. 273, § 46.

[5]See note 4, *supra*.

sory limit mandated by G. L. c. 175, § 113L, and an additional $15,000 in coverage was required to be offered by the insurer pursuant to G. L. c. 175, § 113C). *Id.* at 265-266. This approach — limiting the payment of underinsured benefits under the insured's second policy to $25,000 — was reiterated in *Morrissey* v. *Peerless Ins. Co.*, 400 Mass. 1003 (1987).

Further complexities developed as a result of *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 709 (1988), in which the claimant attempted to obtain the compulsory underinsurance limits of three vehicles that were insured on the same policy. Noting that G. L. c. 175, § 113L, did not require a specific amount of coverage for each insured vehicle, but only mandated a specific amount of coverage under each policy, the Supreme Judicial Court held that stacking of multiple limits under the same policy could be prohibited by the terms of the policy. *Id.* at 712.

The upshot of these and other decisions dealing with various permutations of stacking was that ascertaining the availability and extent of uninsured or underinsured benefits under multiple policies became a complex exercise, yielding inconsistent results depending upon factors such as the date of the accident, the edition of the policies in question, and whether the insured vehicles were on separate policies or the same policy. At the same time, as evinced by the legislative history of the Automobile Insurance Reform Act of 1988, automobile insurance rates became a major cause of concern. The Governor therefore proposed a bill containing, as phrased in the Governor's transmittal letter, "recommendations . . . designed to stabilize automobile insurance rates, to eliminate some of the waste and fraud which have contributed to past rate increases, and to expand and simplify consumers' coverage choices." 1988 House Doc. No. 5074, 1. This bill addressed numerous issues pertaining to automobile insurance, including the issue of stacking. Ultimately, with only minor changes in punctuation and grammar, the Governor's original proposal to abolish stacking and to designate a single policy as each claimant's sole source of uninsured benefits was enacted by the Legislature as section 47 of the Automobile Insurance Reform Act of 1988.

Considering the issue against this backdrop, we think it highly

unlikely that, by using the term "insured," the Legislature was expressing a willingness to permit changes in the standard policy that would alter and make more complex the rules that it set for uninsured coverage in reaction to *Cardin* and its progeny. Instead, we agree with Danielle and CNA that the subsequent modification of the standard insurance policy to reintroduce consideration of which family vehicle a household member claimant was occupying conflicts with the plain intent of the statute to simplify uninsured motorist coverage and, while disallowing stacking, to direct such claimants to whichever household policy has the highest limits of such coverage, regardless of which family car may have been involved in the accident.

We recognize the Commissioner of Insurance (commissioner) decides what the terms of the standard auto policy shall be and that the commissioner's expertise is entitled to deference. Nevertheless, the commissioner's interpretation of automobile insurance law is not controlling and must give way if, as is the case here, it does not conform to the language of and public policy behind the statute. See *Cardin, supra* at 456; *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 448 (1992). Cf. *Colby* v. *Metropolitan Property & Cas. Ins. Co.*, 420 Mass. 799, 806 (1995).

We therefore conclude that the policy to which Danielle may turn for uninsured motorist benefits is the Commerce policy, which provides the higher limits of the two auto insurance policies issued to the Chenard household.[6] The judgments are vacated. A new judgment shall enter consistent with this opinion.

*So ordered.*

---

[6]We have considered and reject Commerce's fall-back position: that CNA's policy should be viewed as providing the higher limits of coverage to Danielle. Commerce bases its argument on the rationale of *Johnson* v. *Hanover, supra*, contending that the coverage limitations contained in its policy should not be invalidated as to amounts above the first $35,000 of coverage — that being the total of the compulsory limits in effect at the time ($20,000) and the additional limits mandated to be offered under G. L. c. 175, § 113C ($15,000). Without deciding whether the policy limitations in question here are aptly analogized to the regular use exclusion at issue in *Johnson* v. *Hanover*, we think that endowing *Johnson* v. *Hanover* with continued vitality would defeat the intent of the Legislature. As discussed above, a primary purpose of the 1988 amendments to G. L. c. 175, § 113L, was to supercede cases, such as *Johnson* v. *Hanover*, that contributed to complexity and inconsistency in the treatment of uninsured motorist coverage under multiple policies.