DANIELLE L. CHENARD *vs.* COMMERCE INSURANCE COMPANY
& another.[1]

Essex. October 7, 2003. - November 26, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist, Construction of policy. *Motor Vehicle,* Insurance.

In an insurance dispute following injuries the plaintiff sustained when she collided with an uninsured motorist while operating a motor vehicle owned by her mother (the policyholder), a Superior Court judge correctly concluded that the language of the insurance policy in question did not provide coverage for the plaintiff's damages because she was not occupying either the policyholder's "auto" as described in the policy or an automobile not owned by the policyholder at the time of the accident [445-446]; moreover, G. L. c. 175, § 113L (5), the uninsured motorist provision of the automobile insurance reform act, did not authorize the plaintiff to recover, where she was not covered by the terms of the policy from which she sought coverage, and where the language of that policy did not conflict with the language or intent of that statute [446-449].

CIVIL ACTION commenced in the Superior Court Department on September 30, 1998.

Motions for summary judgment were heard by *Diane M. Kottmyer,* J., on a statement of agreed facts.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John G. Ryan* for Commerce Insurance Company.

*John P. Graceffa (Richard W. Jensen* with him) for CNA Insurance Companies.

*Peter M. Goldberg* for the plaintiff.

CORDY, J. This case requires us to interpret a provision of the uninsured motorist law, G. L. c. 175, § 113L (5), which was added by the Automobile Insurance Reform Act of 1988. St. 1988, c. 273, §§ 46-47.

[1]CNA Insurance Companies, also known as American Casualty Company.

1. *Background.* The material facts are not in dispute. On November 16, 1994, Danielle L. Chenard (plaintiff) sustained injuries as a result of a collision with an uninsured motor vehicle. At the time of the accident, the plaintiff lived with her mother, Eunice Chenard, and was driving her mother's 1989 Pontiac sedan motor vehicle. Eunice Chenard (policyholder) owned two motor vehicles, the 1989 Pontiac sedan and a 1989 GMC truck, each of which was insured with different companies. CNA Insurance Companies (CNA) insured the Pontiac sedan under a standard Massachusetts automobile policy, sixth edition, with uninsured motorist limits of $100,000 per person and $300,000 per accident; Commerce Insurance Company (Commerce) insured the GMC truck under a similar standard Massachusetts policy with higher uninsured motorist limits of $250,000 per person and $500,000 per accident.

The plaintiff filed claims for uninsured motorist benefits with both Commerce and CNA. Both insurers declined coverage, each claiming that the other was responsible. The plaintiff then brought a declaratory action in the Superior Court. A judge in the Superior Court granted summary judgment in favor of Commerce, holding that the plaintiff was not insured under the language of the Commerce policy. The Appeals Court vacated the summary judgment, holding that the Commerce policy conflicted with the language and intent of the uninsured motorist provisions of G. L. c. 175, § 113L, and concluding that Commerce is the designated provider. *Chenard* v. *Commerce Ins. Co.,* 56 Mass. App. Ct. 576, 583 (2002). We granted Commerce's application for further appellate review and affirm the judgment of the Superior Court.

2. *Discussion.* a. *The Commerce policy.* We first consider whether the plaintiff is entitled to recover from Commerce under the terms of its policy. The interpretation of an insurance policy is a question of law, which we review de novo. See *Rugerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.,* 430 Mass. 794, 797 (2000); *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). Because the language of the standard Massachusetts automobile policy is set by the Commissioner of Insurance (commissioner), it is exempt from the rule of construction requiring ambiguities to be resolved against

the insurer. *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994). Rather, the language should be construed in its usual and ordinary sense. *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997), and cases cited.

In relevant part, the policy provides payment for damages to or for "[a]ny household member, while occupying [the policyholder's] auto, while occupying an auto not owned by [the policyholder] or if injured as a pedestrian."[2] The relevant definition of the policyholder's "[a]uto" is, in turn, "[t]he vehicle or vehicles described on the Coverage Selections Page." The plaintiff and CNA concede that only the GMC truck — not the Pontiac sedan involved in the accident — is listed on the coverage selections page of the Commerce policy.

Although the plaintiff qualified as a household member under its policy, Commerce contends that, because she was not occupying either the policyholder's "auto" as described in the policy (the GMC truck) or an automobile not owned by the policyholder, she was not covered as an "insured" in the circumstances of the accident. We agree. The plaintiff was occupying the Pontiac sedan at the time of the accident, a vehicle owned by the policyholder, insured by CNA, and not otherwise covered under the Commerce policy. If the Pontiac sedan had been owned by someone other than the Commerce policyholder, or if the plaintiff had been injured as a pedestrian,[3] the plaintiff would have been an insured under the Commerce policy. But on the facts presented here, we conclude that she plainly is not.[4]

b. *The uninsured motorist provision of the Automobile Insurance Reform Act.* The plaintiff and CNA contend that if the language of the policy is construed to preclude the plaintiff's recovery as an insured under the Commerce policy, then the

[2]The policy also covers damages to or for "[a]nyone else for damages he or she is entitled to recover because of injury to a person covered under this Part." None of the parties contends that this provision applies.

[3]"Pedestrian" is defined in the policy to include "a person who is walking or who is operating a non-motorized bicycle, tricycle or similar vehicle, or a person on horseback or in a vehicle drawn by an animal." It is undisputed that the plaintiff was not injured as a pedestrian.

[4]The plaintiff is, of course, an insured under the CNA policy that includes the same standard language, as she was occupying the vehicle listed on the coverage selection page of the CNA policy.

policy language is inconsistent with G. L. c. 175, § 113L (5), and the statutory language must prevail. General Laws c. 175, § 113L, sets forth various statutory requirements regarding the provision of uninsured motorist insurance coverage in Massachusetts. Section 113L (5) was added in 1988 as part of the Automobile Insurance Reform Act, St. 1988, c. 273, the goals of which were "to stabilize automobile insurance rates, to eliminate some of the waste and fraud which had contributed to past rate increases, and to expand and simplify consumers' coverage choices." 1988 House Doc. No. 5074, at 1. It provides:

> "(5) Uninsured motorists coverage shall provide that regardless of the number of vehicles involved, whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more vehicles or two or more policies be added together combined or stacked to determine the limits of insurance coverage available to injured persons. An *insured* who is not a named insured on any policy providing uninsured motorist coverage *may recover* only from the policy of a resident relative providing the highest limits of such coverage whether or not such vehicle was involved in the accident; provided, however, if there are two or more such policies which provide such coverage at the same limits a pro rata contribution will be made" (emphasis added).

The enactment of § 113L (5) was a specific response to a series of decisions by this court that permitted "stacking" of insurance policies in certain circumstances.[5] *Skinner* v. *Royal Ins. Co.*, 36 Mass. App. Ct. 532, 534 (1994) ("the primary purpose of [§ 113L (5)] was to preclude 'stacking' "). "Stacking" was the practice of combining the uninsured (or underin-

---

[5]See *LeCuyer* v. *Metropolitan Prop. & Liab. Ins. Co.*, 401 Mass. 709, 711 (1988) (prohibiting stacking of coverage for three vehicles listed on same policy, while reaffirming that coverage under separate policies may be stacked); *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 266 (1987) (prohibiting stacking of coverage beyond coverage mandated by statute); *Lumbermens Mut. Cas. Co.* v. *DeCenzo*, 396 Mass. 692, 694 (1986) (limiting stacking permissible to policies entered into after 1980 amendment to § 113L); *Cardin* v. *Royal Ins. Co. of Am.*, 394 Mass. 450, 456 (1985) (concluding that "strict command of [§ 113L] precludes the insurer's attempt to avoid stacking").

sured) motorist limits of separate policies to create a larger pool of coverage for a single accident. See *id.*

In this context the structure and operation of the statutory provision is readily apparent. The first sentence definitively eliminates the stacking of multiple policies that, by their terms, might otherwise apply to an accident involving an uninsured motorist. The second sentence sets out the rules to be used if two or more policies provide uninsured motorist coverage to someone other than the named insured on the policies. In the circumstances of this case, for example, if the plaintiff had been injured as a pedestrian by an uninsured driver, she would plainly be covered as an "insured" under both policies, and, because the Commerce policy provides the higher uninsured motorist coverage, § 113L (5) would mandate that it be the policy (and the only policy) under which she could recover.

The statutory provision does not create additional coverage or coverage for additional persons beyond that provided by the purchased policies. By its terms, the second sentence of § 113L (5) applies only to someone who is an "insured." That term, while not defined in the statute, refers, in its ordinary sense, to a person covered by an applicable insurance policy. See, e.g., Black's Law Dictionary 811 (7th ed. 1999) (defining "insured" as "person who is covered or protected by an insurance policy"); 7 Oxford English Dictionary 1060 (2d ed. 1989) (defining "insured" as "person [or persons] to whom an insurance upon property is to be paid on the occurrence of loss or damage"). Read in this fashion, the statute's language applies only to persons who are "insureds" under the terms of policies owned by their resident relatives, or, stated otherwise, the terms of the particular policies in effect dictate whether a person is an "insured," to whom § 113L (5) applies. The language of the Commerce policy does not conflict with the language or intent of the statute.

Our holding in *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523 (1991), is not contrary to this result. There, relying on *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259 (1987), we remarked that "the Legislature intended to include members of the insured party's household under [uninsured motorist] coverage when it passed G. L. c. 175, § 113L." *Id.* at 526. This statement did not relate

to § 113L (5), whose enactment postdated the claim at issue in the *Vaiarella* case, and merely reflected our conclusion that, when the Legislature mandated uninsured motorist coverage it did not intend that such coverage be limited to *named insureds* under a policy, to the exclusion of other household members. The *Vaiarella* case does not, however, stand for the proposition that § 113L mandates that uninsured motorist insurance cover *all* household members, on *all* policies, in *all* circumstances. See *Johnson* v. *Hanover Ins. Co., supra* at 263 ("Legislature intended to include household members within the protection of § 113L at the time of its enactment. In our view the term 'persons insured thereunder' as used in § 113L [(1)] refers to those persons *who are designated within the applicable policy provision [of the Massachusetts automobile insurance policy, second edition] as being insured* for the purpose of uninsured motorist coverage" [emphasis added]).[6]

3. *Conclusion.* A person is "[a]n insured" for purposes of G. L. c. 175, § 113L (5), only if that person is covered by the terms of the policy from which coverage is sought. Here, the Commerce policy does not provide the plaintiff with coverage; hence, G. L. c. 175, § 113L (5), does not authorize the plaintiff to recover from it. The judgment and order of the Superior Court are affirmed.

*So ordered.*

---

[6]In *Johnson* v. *Hanover Ins. Co., supra,* although we did not decide the issue, we "express[ed] our reservation" as to whether § 113L would permit a policy to exclude a household member injured while operating an auto *not* owned by the policyholder. *Id.* at 263 n.6. In this case, we affirm that there is no conflict between § 113L and the standard Massachusetts automobile insurance policy, sixth edition, which excludes a household member injured while operating an auto owned by the policyholder but not listed on the policy's coverage selections page. By approving standard policy language that excludes household members from uninsured coverage if they are driving an auto owned by the named insured but not described on the coverage selections page, the commissioner has implicitly reached the same conclusion. *Colby* v. *Metropolitan Prop. & Cas. Ins. Co.,* 420 Mass. 799, 806 (1995) ("commissioner's interpretation of the relevant statutes, although not controlling, is entitled to deference"). We are not called on here to decide whether § 113L would permit an exclusion of household members broader than the exclusion provided by the policy.