VERNON MAYO vs. AETNA CASUALTY AND SURETY
COMPANY.

Middlesex. October 6, 1994. - March 6, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance,* Construction of policy, Underinsured motorist, Workers' com-
pensation insurance. *Contract,* Insurance. *Workers' Compensation Act,*
Action against third person.

An unambiguous provision in an underinsured motorist section of the stan-
dard Massachusetts Motor Vehicle Combination Policy that required a
set-off of workers' compensation payments against any amounts payable
under the policy on account of bodily injury did not contravene either
the language or the legislative policy of G. L. c. 175, § 113L (4), and
was enforceable. [599-601]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 3, 1990.

The case was heard by *James F. McHugh,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Kevin M. Truland* for the defendant.

*James N. Decoulos* for the plaintiff.

O'CONNOR, J. The workers' compensation set-off provision
in the underinsured motorist section of the standard Massa-
chusetts Motor Vehicle Combination Policy at issue in this
case provides in relevant part, "Any amount payable because
of bodily injury sustained in an accident by a person insured
under this coverage shall be reduced by the amount paid and
the present value of all amounts payable on account of such
bodily injury under any workers' compensation law, disability
benefits law or any similar law." The sole question presented
by this appeal is whether that contractual provision is en-
forceable. We answer the question, "Yes."

On March 29, 1988, the plaintiff, Vernon Mayo, was employed by the Massachusetts Turnpike Authority (MTA). At that time, the defendant, Aetna Casualty and Surety Company (Aetna), insured the MTA pursuant to a standard combination policy that contained underinsured motorist coverage limits of $500,000 for injuries sustained by occupants of vehicles, owned by the MTA and used in the conduct of its business, resulting from negligent operation by the driver of another, underinsured, automobile. The policy contained the provision quoted above. On that day, Mayo was a passenger in a van owned by the MTA and operated by a fellow employee. While Mayo and his fellow employee were proceeding on a public way in the course of their employment, the van was struck by another vehicle operated by Amy Beth Felix, and Mayo was seriously injured. Mayo settled his personal injury claim against Felix with her liability insurance carrier for $10,000, which was her maximum coverage. Mayo also has received substantial workers' compensation benefits related to his injuries.

Thereafter, Mayo made a claim against Aetna for underinsurance benefits as provided in the MTA's policy. He commenced an action in the Superior Court seeking an arbitration order pursuant to G. L. c. 251, § 2 (1992 ed.), and a judge ordered that the case be referred to an arbitrator. During the arbitration proceedings, Aetna requested that the damages to be determined by the arbitrator be reduced by the amount of workers' compensation benefits paid to Mayo and the present value of all future workers' compensation benefits payable to him. Mayo opposed such a reduction, arguing that it would violate G. L. c. 175, § 113L (4), as amended through St. 1980, c. 532, §§ 1, 2, because the workers' compensation carrier, in this case the MTA as self-insurer, was not the tortfeasor responsible for the injuries. At the time the Aetna policy was issued to the MTA, as well as at the time of the accident, G. L. c. 175, § 113L (4), provided in relevant part as follows:

"In the event of payment to any person under the coverage required by this section [insurance against damages caused by uninsured and underinsured motorists] and subject to the terms and conditions of such coverage, the insurer making such payment [here, Aetna] shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made. . . ."[1]

The arbitrator found Mayo's total damages to be $609,500. He also found that Mayo had received workers' compensation benefits in the sum of $105,251.17 and that the value of unpaid, but payable in the future, workers' compensation benefits was $170,249. Thus, as the arbitrator observed, if Aetna was entitled to a reduction in the total damages by the sum of paid workers' compensation benefits and the then present value of future benefits, Aetna would owe Mayo $323,999.83 exclusive of interest. That figure reflects a reduction by the $10,000 that Mayo recovered from Felix's liability carrier. In accordance with the parties' agreement, resolution of the question whether Aetna's obligation would be reduced by the paid workers' compensation benefits and the present value of future benefits was left to the Superior Court.

After a hearing, a judge of that court allowed a motion filed by Mayo seeking an order for payment of the full amount of Mayo's damages as found by the arbitrator. The judge denied a motion by Aetna that the order for payment reflect a reduction from full damages of paid workers' compensation benefits and the present value of future compensation benefits. Judgment was entered in Mayo's favor for

---

[1] In 1988, G. L. c. 175, § 113L, was amended to require underinsured motorist coverage, but only "if the policyholder or obligor elects to purchase" it. St. 1988, c. 273, §§ 46, 47.

$500,000, Aetna's policy limits. Aetna appealed and we transferred the case to this court on our own initiative.

The relevant policy language is unambiguous. Neither party contends otherwise. "We must construe the words of the policy according to 'the fair meaning of the language used, as applied to the subject matter,' . . . as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened" (citations omitted). *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986). Therefore, Aetna's liability in this case, as the policy states, "shall be reduced by the amount paid and the present value of all amounts payable on account of [Mayo's] bodily injury under any workers' compensation law," including the payments made and the present value of payments to be made to Mayo by the MTA, as workers' compensation self-insurer, unless such reduction would contravene the language or legislative policy of G. L. c. 175, § 113L. *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985).

The contractually provided reduction does not contravene either the language or the legislative policy of G. L. c. 175, § 113L. Specifically, contrary to Mayo's principal argument, the reduction would not contravene § 113L (4), quoted above, which, in substance, provides that an insurer that makes payments to an injured person pursuant to a statutorily required underinsurance provision of a motor vehicle policy shall be entitled to reimbursement from the proceeds of a judgment or settlement obtained by the injured person from the tortfeasor that caused the injuries. The absence from G. L. c. 175, § 113L (4), of a similar provision, which would entitle a provider of underinsurance benefits to reduce its payments by the amount of workers' compensation benefits already paid and those to be paid in the future neither explicitly states nor implies that a contractual provision to that effect violates legislative policy.

We are aware of no statute that suggests such a conflict. Instead, G. L. c. 152, § 15 (1992 ed.), governing workers' compensation, suggests the opposite. That section, which authorizes third-party tort actions to be brought either by an

injured worker or by the insurer from whom the worker has received workers' compensation benefits, ensures that, regardless of who brings the action, the worker does not enjoy double recovery at the workers' compensation carrier's expense. Indeed, the provision in G. L. c. 175, § 113L (4), that an insurer that has made a payment pursuant to underinsured motorist coverage shall be entitled to reimbursement from the proceeds of any recovery by the injured party from the tortfeasor, accomplishes the same goal; prevention of double recovery by the injured party. The contractual (policy) provision, too, accomplishes that result; prevention of double recovery and, as a consequence, a lessening of the cost of motor vehicle insurance, without diminution or circumvention of statutorily mandated minimum limits of coverage. The legislative purpose in enacting G. L. c. 175, § 113L, was to ensure that automobile accident victims would be adequately compensated for injuries caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage. See *Cardin* v. *Royal Ins. Co.*, *supra* at 454 (G. L. c. 175, § 113L, is designed to protect victims of automobile accidents from injury caused by motorists who could not make the injured party whole). See also *Surrey* v. *Lumbermens Mut. Casualty Co.*, 384 Mass. 171, 177 (1981). The legislative purpose in enacting G. L. c. 175, § 113L, was not to compel insurers to provide insured persons with recovery in excess of their damages.

We conclude that the amount of underinsured motorist coverage benefits payable to the plaintiff are $323,999.83, which represents the difference between (a) $609,500 and (b) the total of (i) $10,000 (the amount of bodily injury liability coverage received from the tortfeasor's liability insurer), (ii) $105,251.17 (paid workers' compensation benefits), and (iii) $170,249 (present value of future payable workers' compensation benefits).[2] The judgment is reversed

---

[2] We reject the plaintiff's argument that the setting off of the present value of future workers' compensation payment is so speculative that a policy provision that would require it is unenforceable. A reasonable inference in that regard based on adequate evidence is permissible in the same

and the case is remanded to the Superior Court for the entry of a judgment consistent with this opinion.

*So ordered.*

---

way that a finding of the present value of future lost earning capacity, a frequent element of personal injury tort damages, may be warranted.