Fremont-Smith, J.
In the above-captioned action Fannie Y. Batts, executrix under the will of the estate of Ruby Short, or John Doe, personal representative of the estate of Ruby Short (hereinafter, collectively referred to as “plaintiff’), seeks uninsured or underinsured benefits from The Travellers Insurance Company (hereinafter “defendant”), for injuries allegedly sustained by Ruby Short (hereinafter, “deceased”) in an incident which occurred on March 24, 1993. The plaintiff also seeks recovery from the defendant pursuant to G.L.c. 93A and G.L.c. 176D based on defendant’s failure/refusal to pay said uninsured or underinsured motorist benefits. Defendant moves for summary judgment with regard to these claims; plaintiff opposes this motion, and in doing so, requests that summary judgment enter in its favor.
For the following reasons, defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The following facts are undisputed for purposes of this motion:
On March 24, 1993, the deceased had parked her car, with its engine running, outside her residence at 12 Wildwood Street in Dorchester, Massachusetts. As the deceased walked toward her vehicle, she was approached by an unknown assailant who pushed her up against a fence, entered her car, and drove away. As a result of this incident, the deceased allegedly sustained personal injuries which are claimed to have contributed to her death on June 23, 1993.
At the time of this incident there was in effect a Massachusetts (Personal) Automobile Insurance Policy, issued to the deceased by the defendant. This policy affords uninsured motorist coverage with limits of $100,000 “per person” and $40,000 “per incident,” and underinsured motorist benefits with the same limits. Plaintiff has previously received PIP benefits under this policy for injuries sustained by the deceased.
DISCUSSION
Page three of the decedent’s policy, within the section entitled “Our Agreement,” provides that “[t]his policy is a legal contract under Massachusetts law. Because this an auto policy, it only covers accidents and losses which result from the ownership, maintenance or use of autos. The exact protection is determined by the coverages you purchased.” Furthermore, on page two of the policy, “Accident” is defined as “an unexpected, unintended event that causes bodily injuiy or property damage arising out of the ownership, maintenance or use of an auto.” Significantly, under this definition, an accident need not necessarily involve any auto other than that belonging to the insured.
It is not suggested by either party that the deceased’s injuries arose from the “maintenance” of an auto. However, the plaintiff does assert that the deceased’s injuries arose from the “use” of an auto.
Plaintiff arrives at frs conclusion principally in reliance upon a Florida case in which personal injury protection benefits were afforded to a motorist who had been shot by a pedestrian after the motorist refused the pedestrian a ride. See Government Employees Insurance Co. v. Novak, 453 So. 2d 1116 (Fla. 1984). However, plaintiffs reliance upon this case flies in the face of Massachusetts’ own case law.
In the case of Rischitelli v. Safety Insurance Co., 423 Mass. 703 (1996), the plaintiff sustained personal injuries when, following an accident between his vehicle (owned by his mother) and another, the driver of the other vehicle exited that vehicle and physically attacked the plaintiff. 423 Mass. 703, 703 (1996). The other driver left the scene without identifying himself and was never found. As an insured under his mother’s standard Massachusetts automobile insurance policy issued by the defendant, the plaintiff sought to recover uninsured motorist, medical payments, and personal injury protection (PIP) benefits.
The Supreme Judicial Court determined that the sole issue it needed to address was “whether there was an accident or a loss (i.e., injuries) arising from the use of an automobile, ” further noting that “ [o]ur cases have not defined those circumstances in which an injury is one arising out of the use of an automobile.” Id. at 704.
In the instant case, as in Rischitelli plaintiffs injuries resulted from an assault and battery. However, in Rischitelli, unlike the instant case, the assault and *339 battery came on the heels of an auto collision involving the vehicle which the plaintiff was driving. Nevertheless, the Court found in Rischitelli that the plaintiffs injuries did not arise from the use of an auto. Instead, the Court found that the battery on the plaintiff was sufficiently independent of the motor vehicle collision that the losses that the plaintiff sustained arose from the intentional wrongdoing of the other driver and not from the use of an auto. Id. at 707. Moreover, in arriving at that conclusion, the Court specifically cited and rejected Novak, supra, upon which plaintiff now relies, warning that “(t)here are courts that have extended the concept of the use of an automobile well beyond the limits this court has set.” Id. at 706. Thus, guided by this holding, and the fact that the plaintiff in the instant case does not even have the benefit of a related auto collision, plaintiffs injuries, as a matter of law, must be deemed as not arising from the use of an auto. See also, Sabatinelli v. The Travelers Insurance Co., 674, 676-77 (1976) (where driver of an auto shot another driver, the injury did not arise out of the use of an automobile).[1]
The other possibility, to which the plaintiff alludes in its memorandum, is that the deceased’s injuries arose from her "ownership” of an auto; that is, the deceased’s assailant intended to steal her auto, and but for the fact that the deceased owned the auto which was attempted to be stolen, she would not have been injured. Although Massachusetts case law does not appear to have defined the circumstances in which an injury is one arising out of the ownership of an auto, the instant case does not require a resolution of that issue.
It is well settled that in interpreting a Massachusetts automobile insurance policy providing uninsured/underinsured motorist coverage, courts “must construe the words of the policy according to the ‘fair meaning of the language used’ ... as long as the statutory language or legislative policy of G.L.c. 175, §113L, is not contravened.” Manning v. Firemen's Fund American Ins. Cos., 397 Mass. 38, 40 (1986) quoting Bilodeau v. Lumbermans Mut. Casualty Co., 392 Mass. 537, 541 (1984). In the policy belonging to the deceased, Part 3 entitled “Bodily Injury Caused By An Uninsured Auto” provides, in relevant part:
Sometimes an owner or operator of an auto legally responsible for an accident is uninsured. Some accidents involve unidentified hit-and-run autos. Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos.
Similarly, Part 12 of the policy entitled “Bodily Injury Caused By An Underinsured Auto” provides, in relevant part:
Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.
Under the fair meaning of the language used, including the language chosen in titling each of these sections, it is clear that the plaintiff may recover under these particular provisions only if the injuries to the deceased were caused by another auto. Since it is undisputed that the injuries to the deceased were not caused by another auto, but by an assailant, the defendant is entitled to summary judgment with regard to plaintiffs claims under these parts of the policy, unless such result would be contrary to the statutory language or legislative policy of G.L.c. 175, §113L.
The language in the above sections of the policy, however, appears to track the language in the statute which provides, in relevant part:
No policy shall be issued or delivered in the Commonwealth with respect to a motor vehicle . . . unless such policy provides coverage ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . G.L.c. 175, §113L(1).
The statute further provides that, if such coverage is elected, the policy shall include coverage for the “protection of persons insured thereunder who are legally entitled to recover damages from owners or operators” of underinsured motor vehicles. G.L.c. 175, §113L(2).
Moreover, in elucidating the purpose of the statute, the Massachusetts courts have held that it is intended to protect against injuries caused by unidentified motorists or motorists with insufficient, or no liability coverage. See Cardin v. Royal Ins. Co., 394 Mass. 450, 454 (1985); Mayo v. Aetna Casualty & Surety Co., 419 Mass. 596, 600 (1995). Conversely, there is nothing in the statute to suggest that it was designed to protect an insured from random violent acts of nonmotorists. See Santos v. Lumbermans Mut. Casualty Co., 408 Mass. 70, 85 (1990).
Thus, it is apparent that the denial of uninsured or underinsured benefits to the plaintiff in these circumstances is a result which is required by the statutory language and legislative policy of G.L.c. 175, §113L. As such, the defendant is entitled to summary judgment on plaintiffs claims under the uninsured/underinsured provisions of the policy.
It follows that, because the deceased is not entitled to coverage under the uninsured/underinsured provisions of the policy, defendant cannot be held to have violated G.L.c. 93A or G.L.c. 176D in refusing plaintiffs demand for payment under these provisions. See Higgenbottom v. Aetna Casualty & Surety Co., 12 Mass.App.Ct. 927, 928 (1981).
ORDER
For all of the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judg *340 ment is ALLOWED, plaintiffs cross-motion is DENIED, and the complaint is DISMISSED.

Although not included in its memorandum, plaintiff also cites Assetta v. Safety Insurance Co., 43 Mass.App.Ct. 317 (1997), further appellate review denied, 426 Mass. 1103 (1997), in support of the proposition that the deceased’s injuries arose from the use of an auto. In Assetta, plaintiff was injured by a bottle thrown from a passing vehicle. The Appeals Court held that the trial judge was warranted in concluding that the plaintiffs injuries arose from the use of the underinsured automobile based on the undisputed fact that the bottle was tossed while the passing vehicle was accelerating, and, therefore, that it was reasonable to assume that the vehicle’s movement affected both “the trajectory of the bottle and the force with which it struck the plaintiffs face.” Id. at 319. Clearly, Assetta is distinguishable from the instant case, as it involved an accelerating vehicle, whereas this case involves at most a parked, unoccupied vehicle.