Gants, J.
The underlying facts of this case are not in dispute. On January 18, 2000, the defendant, Joseph Umanzio (“Umanzio”), was struck by an automobile during the course of his employment with the City of Cambridge (“the City”). Umanzio settled the bodily injury portion of his claim with the driver of the automobile for $20,000, the liability limit of the driver’s automobile insurance policy with Arbella Mutual Insurance Company (“Arbella”). Umanzio then made a claim for underinsured motorist (“UM”) benefits under his own Massachusetts Automobile Insurance Policy (“the Policy”) with the plaintiff, Commonwealth Mutual Insurance Company (“Commonwealth Mutual”). In addition, while that UM claim was pending with Commonwealth Mutual, Umanzio received workers’ compensation benefits from the City. On or about March 27, 2001, Umanzio and the City entered into a settlement in which, in return for the continued payment of workers’ compensation benefits by the City, Umanzio agreed to pay the City one third of the $20,000 insurance settlement he obtained from Arbella — the tortfeasor’s insurance company ($6,666.66) — and one-third of any underinsurance payment he received from Commonwealth Mutual. This settlement was approved under G.L.c. 152, §15 by the Administrative Law Judge of the Reviewing Board of the Department of Industrial Accidents (“DIA”) on April 12, 2001.
Umanzio and Commonwealth Mutual could not agree on the amount of damages that were caused by the accident so, pursuant to the terms of the Policy, they agreed to arbitrate Umanzio’s UM claim before a three person panel. On January 28, 2002, three days before the arbitration proceedings were scheduled to begin, Commonwealth Mutual filed this declaratory judgment action, seeking a declaration that Commonwealth Mutual is entitled to reduce the arbitrators’ gross damage award by the amount collected from Arbella and the amount paid by the City to Umanzio in workers’ compensation benefits.
On or about January 30, 2002, Commonwealth Mutual and Umanzio, through their attorneys, entered into an Arbitration Agreement and a Stipulation. Under the Arbitration Agreement, Commonwealth Mutual and Umanzio agreed that “(t)he arbitrators’ award, if any, shall be reduced by the amount of bodily injury payments already paid by Arbella ... to the plaintiff in the amount of $20,000.” Under the Stipulation, Commonwealth Mutual and Umanzio agreed to proceed with the arbitration despite the pending declaratory judgment action with the understanding that “the Court shall determine and apply any and all offset [Commonwealth Mutual] may be entitled to receive concerning workers’ compensation benefits paid to [Umanzio] after the decision of the arbitrators is rendered.” The Stipulation specifically provided that ”[t]he execution of this stipulation shall not be construed as a waiver of either party’s rights concerning the issues of a credit of workers’ compensation benefits due to [Umanzio].” The arbitration proceedings then commenced and, on February 26, 2002, the arbitrators determined that Umanzio was entitled to a gross damages award of $87,500. Neither Commonwealth nor Umanzio challenges the appropriateness of this gross damages arbitration award.
Commonwealth Mutual now seeks summary judgment on its declaratory judgment complaint concerning the appropriate offset to the gross damages arbitration award.

DISCUSSION

Under the provisions in the Policy governing “Bodily Injury Caused By An Underinsured Auto,” Commonwealth Mutual “will reduce the damages an injured person is entitled to recover by:
1. The total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos.
*35 3. The amount paid under a workers’ compensation law or similar law ..."
Policy at 22.
Under the plain language of the first offset provision, Commonwealth may reduce the amount it pays to Umanzio under the arbitrators’ award by the $20,000 that Umanzio received from Arbella — the automobile bodily injury liability insurance covering the tortfeasor. Indeed, this $20,000 reduction was already agreed to by Umanzio in the Arbitration Agreement.
The consequence of the second offset provision is more difficult to ascertain. In Mayo v. Aetna Cas. and Sur. Co., the Supreme Judicial Court held enforceable a similar offset provision reducing the amount of UM benefits paid under an automobile insurance policy by the amount the insured person recovered from the tortfeasor’s insurer and the amount paid (plus the present value of the amount to be paid) in workers’ compensation benefits. 419 Mass. 596 (1995). In that case, the Supreme Judicial Court concluded that “the amount of underinsured motorist coverage benefits payable to the plaintiff are $323,999.83, which represents the difference between (a) $609,500 [the arbitrator’s gross damage award] and (b) the total of (i) $10,000 (the amount of bodily injury liability coverage received from the tortfeasor’s liability insurer), (ii) $105,251.17 (paid workers’ compensation benefits), and (iii) $170,249 (present value of future payable workers’ compensation benefits).” Id. at 600. If I were to follow that procedure, I would find that the amount of UM benefits due Umanzio are $33,004.72, which would represent the difference between (a) the arbitrators’ gross damage award of $87,500 and (b) the total of (i) the $20,000 received from the tortfeasor’s liability insurer, and (ii) the $34,495.28 paid to Umanzio in workers’ compensation benefits through the date of the arbitration award.
However, in Mayo, in contrast with the case here, there appears to have been no settlement with the workers’ compensation carrier in which the carrier received partial reimbursement of the amount of workers’ compensation benefits it paid to Mayo (or, at least, no reference to it in the decision). Here, there was a settlement approved by the DIA that essentially provided that one-third of the amount Umanzio received from Arbella and Commonwealth Mutual would be paid to the City to reimburse the City for workers’ compensation benefits paid to Umanzio. As a result of this settlement, the City has paid $34,495.28 in gross workers’ compensation benefits to Umanzio, but it has paid only $27,828.62 in net benefits, because Umanzio is repaying the City $6,666.66 of the $20,000 he received from Arbella in compromise of the City’s workers’ compensation lien. If I were to permit Commonwealth Mutual to offset from the arbitrators’ gross award both the $20,000 received from Arbella and the $34,495.28 in gross workers’ compensation benefits, I would be shortchanging Umanzio because I would be double-counting against him the $6,666.66 he received from Arbella but had to repay to the City. This double-counting would be contrary to the legislative purpose in enacting G.L.c. 175, §113L — the statute mandating the inclusion of UM coverage in automobile insurance policies which was to ensure that automobile accident victims would be adequately compensated, but not paid an amount in excess of their damages, for injuries caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage. See Mayo v. Aetna Cas. and Sur. Co., 419 Mass. 596, 600 (1995). Therefore, I will permit Commonwealth Mutual to reduce the arbitrators’ gross damage award of $87,500 by the $20,000 received from Arbella and the $27,828.62 paid to Umanzio in net workers’ compensation benefits through the date of the arbitration award, yielding UM benefits payable to Umanzio of $39,671.38.
I recognize that, because of the settlement he reached with the City, Umanzio will be required to pay the City one-third of the amount he receives from Commonwealth Mutual, which will result in him not being fully compensated for his damages. Umanzio contends that, to avoid this result, his workers’ compensation offset should be reduced by one-third of the amount he will receive in UM benefits from Commonwealth Mutual. I will not do this for the quite pragmatic reason that attempting to do so leads to an indeterminate amount of UM benefits. For instance, Umanzio wants this Court to reduce the amount of the workers’ compensation offset by the $13,210.57 he would have to pay to the City if the UM benefits were $39,671.38 [the UM benefits of $39,671.38 multiplied by 0.333], but to do so would increase the amount of UM benefits to $52,882.07, which would mean that Umanzio would then need to reimburse the City $ 17,609.69 (the UM benefits of $52,881.95 multiplied by 0.333), which would then require yet another reduction in the workers’ compensation offset, and so on. In short, by agreeing to reimburse the City with a percentage of his UM benefits, Umanzio has made it impossible for him to be fully compensated for his damages.[1]

ORDER

For the reasons stated above, after hearing, Commonwealth Mutual’s motion for summary judgment is ALLOWED to the extent that this Court declares that Commonwealth Mutual may reduce the arbitrators’ gross damage award of $87,500 by the $20,000 received from Arbella and the $27,828.62 paid to Umanzio by the City in net workers’ compensation benefits through the date of the arbitration award, yielding UM benefits payable to Umanzio of $39,671.38.

There is yet another reason why this offset should not be done. The Policy provides for an offset in the amount already paid in workers' compensation benefits. The settlement negotiated by Umanzio essentially reduces the amount of net workers' compensation benefits received by Umanzio after the UM benefits are paid.
*36 It should also be noted that Umanzio had no legal obligation to promise the City one-third of the proceeds of his UM benefits, since the City could not have placed a lien on Umanzio's receipt of UM benefits. Wincek v. West Springfield, 399 Mass. 700 (1987). If Umanzio had negotiated a smaller amount of workers’ compensation benefits with the City rather than promising it one-third the UM benefits paid by Commonwealth Mutual, it would have resulted in a smaller workers’ compensation offset from the UM benefits and allowed him full recovery of his damages.