COMMERCE INSURANCE COMPANY *vs.* ANGELICA M.
BLACKBURN & another.[1]

No. 11-P-805.

Suffolk. January 4, 2012. - April 2, 2012.

Present: KATZMANN, VUONO, & MEADE, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Amount of
recovery for loss. *Motor Vehicle,* Insurance.

In a civil action arising from a dispute about the amount of underinsured
motorist benefits available to the defendant injured parties after an
automobile accident, the Superior Court judge properly granted summary
judgment in favor of the insurer, where the language of the policy clearly
made the insurer's obligation to pay underinsured motorist benefits subject
to the "per person" limit of the policy, such that the amount received in
per person bodily injury payments from the tortfeasor would be subtracted
from the maximum per person underinsured motorist coverage, and the
total amount of underinsured benefits to be paid to all persons with under-
insured claims could not exceed the per accident limit of the policy.
[520-524]

CIVIL ACTION commenced in the Superior Court Department on
January 5, 2009.

The case was heard by *Geraldine S. Hines,* J., on motions for
summary judgment.

*Michael D. Weisman* for the defendants.

*John G. Ryan* for the plaintiff.

KATZMANN, J. In a dispute about the amount of underinsured
motorist benefits available to the insured parties after an auto-
mobile accident, a judge of the Superior Court granted the
insurer's motion for summary judgment. This appeal followed.

*Background.* The facts, which were stipulated by the parties,
are not in dispute. On May 9, 2008, Steven D. Blackburn

---

[1]Steven D. Blackburn.

(Steven) was driving and Angelica M. Blackburn (Angelica)[2] (collectively, Blackburns) was a passenger when they were involved in an accident with a vehicle driven by Helen Vieira. Vieira's Travelers Insurance Company (Travelers) policy had bodily injury liability coverage limits of $50,000 per person and $100,000 per accident. As a result of the accident, Angelica incurred medical bills and lost wages in excess of $241,000 and Steven incurred medical bills and lost wages in excess of $80,000. Vieira's insurer paid $50,000 per person to Steven and Angelica, exhausting the limits of Vieira's coverage for bodily injury to others.

Because their injuries exceeded the amount available through Vieira's insurance, the Blackburns also sought coverage from their insurer, Commerce Insurance Company (Commerce), pursuant to their automobile insurance policy's $100,000 per person and $300,000 per accident underinsured motorist (UIM) coverage.[3] Here, the parties agree that the Blackburns have a valid claim for UIM benefits. However, they disagree as to the amount of available coverage. Commerce claims that the Blackburns should each receive $50,000, and the Blackburns claim that they should each receive the full $100,000 that is listed as their policy's UIM coverage.[4] Commerce commenced this action in Superior Court seeking a judgment declaring the amount of UIM benefits owed to the Blackburns. Commerce and the Blackburns filed cross motions for summary judgment. The trial judge granted summary judgment for Commerce.

*Discussion.* "The interpretation of an insurance policy is a question of law, which we review de novo. Because the language of the standard Massachusetts automobile policy is set by the Commissioner of Insurance . . . , it is exempt from the rule of construction requiring ambiguities to be resolved against the insurer. Rather, the language should be construed in its usual and ordinary sense." *Chenard* v. *Commerce Ins. Co.*, 440 Mass. 444, 445-446 (2003) (citations omitted). "Interpretation of an

---

[2]We refer to the insureds by their first names to avoid confusion.

[3]The Blackburns' automobile was insured under a standard Massachusetts automobile insurance policy, seventh edition.

[4]Since Commerce agrees that it owes at least $50,000 in UIM benefits to both Steven and Angelica, it paid this undisputed amount prior to the commencement of this action.

insurance policy is no different from interpretation of any other contract." *Citation Ins. Co.* v. *Gomez,* 426 Mass. 379, 381 (1998). "Like all contracts, the terms of an insurance policy will be construed according to the fair meaning of the language used, as applied to the subject matter." *Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.,* 449 Mass. 422, 426 (2007) (quotation omitted). "[A] contract is to be construed to give a reasonable effect to each of its provisions." *McMahon* v. *Monarch Life Ins. Co.,* 345 Mass. 261, 264 (1962). "[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 795 (1986), quoting from *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 501 (1939). Thus, we turn to the language of the insurance policy.

In "Part 12. Bodily Injury Caused by an Underinsured Auto," the policy specifies, "We will reduce the damages an injured person is entitled to recover by: 1. The total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos." After listing three additional situations where the insurer would reduce the damages that the insured would be entitled to recover, the policy states:

> "If only one person sustains bodily injury, we will pay any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos and the 'per person' limit shown for this Part on your Coverage Selections Page. This is the most we will pay for injuries to one or more persons as the result of bodily injury to any one person in any one accident. [Hereinafter paragraph A]

> "Subject to the 'per person' limit, if two or more people sustain bodily injury and are entitled to coverage under this Part, we will pay any unpaid damages up to the differ-

ence between the automobile bodily injury liability insurance 'per accident' limit covering the legally responsible owners and operators and the 'per accident' limit shown for this Part on your Coverage Selections Page. This is the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one accident." [Hereinafter paragraph B]

The Blackburns argue that under paragraph B the insurer agrees to pay up to the difference between the per accident limit of Vieira's coverage ($100,000) and the per accident limit of their Commerce policy ($300,000), which is $200,000. Thus, they argue that they are entitled to their full per person benefits of $100,000 each, which equals the maximum $200,000 liability pursuant to paragraph B.

Commerce argues that the language "subject to the per person limit" in paragraph B makes the calculation of UIM benefits under this paragraph identical to the calculation of benefits for injury to a single person pursuant to paragraph A. Thus, Commerce argues that for both Angelica and Steven the proper calculation is the difference between the per person Commerce coverage limits ($100,000) and the amount that each person received in bodily injury coverage from Vieira's insurer ($50,000) so that each of the Blackburns is entitled to $50,000 in UIM benefits from Commerce.

Underinsured motorist benefits are governed by G. L. c. 175, § 113L. "The legislative purpose in enacting G. L. c. 175, § 113L, was to ensure that automobile accident victims would be adequately compensated for injuries caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage." *Mayo* v. *Aetna Cas. & Sur. Co.*, 419 Mass. 596, 600 (1995) (*Mayo*). The statute specifically leaves the details of UIM coverage "subject to the terms of the policy." G. L. c. 175, § 113L(2), as amended by St. 1991, c. 376. Thus, "[w]e must construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter, . . . . as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened." *Mayo*, *supra* at 599 (quotation and citation omitted).

The "fair meaning" of the language used in the policy com-

ports with the interpretation advanced by Commerce. Here, the key term in paragraph B is the language specifying that recovery is "[s]ubject to the 'per person' limit." We discern no ambiguity in that phrase, and consistent with basic contract principles, we apply its meaning and effect. See *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 448 (1992). When read together with the policy language stating that the insurer will reduce damages by the total amount recovered from the tortfeasor's insurance (quoted *supra*), the "fair meaning" of the policy is that the amount received in per person bodily injury payments from the tortfeasor (here $50,000) is subtracted from the maximum per person UIM coverage (here $100,000) for a total UIM benefit of $50,000 per person. The sole difference in calculation between paragraph A and paragraph B is that under the latter provision the total amount of underinsured benefits to be paid to all persons with underinsured claims cannot exceed the per accident limit.[5] In short, the "[s]ubject to" provision creates the same financial cap on a single person's UIM damages, whether that person is the only person injured or one of any number of persons injured in a particular accident. See *Starr* v. *Fordham*, 420 Mass. 178, 192 (1995), quoting from Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable . . . meaning to all the terms is preferred to an interpretation which leaves a part unreasonable"). Such an interpretation is consistent with the canon of contract construction that terms are to be read in a harmonious way.

The Commerce interpretation comports with the fair meaning of the policy language and is not inconsistent with the language of G. L. c. 175, § 113L. Cf. *Mayo*, 419 Mass. at 600 (deducting amounts received for [1] bodily injury liability coverage from the tortfeasor's liability insurer and [2] worker's compensation benefits from the amount of UIM benefits does not contravene G. L. c. 175, § 113L). That interpretation is also consistent with the principle that "policy language must be 'read as a whole and in the context of the insurance scheme in Massachusetts.' "

[5]Thus, the $200,000 difference between the $100,000 per accident limit of the Travelers policy issued to Vieira and the $300,000 limit of the Commerce policy issued to the Blackburns is under paragraph B "the most we will pay for injuries to two or more people as a result of bodily injury to two or more people in any one accident."

*Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.*, 449 Mass. at 427, quoting from *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co.*, 439 Mass. 309, 313 (2003). Accordingly, we affirm the judge's decision granting summary judgment for Commerce.[6] See *Amica Mut. Ins. Co.* v. *Bagley*, 28 Mass. App. Ct. 85, 90 (1989).

*So ordered.*

.

---

[6]Insofar as the Blackburns' argument is formulated as the need to strengthen UIM coverage protections, such a reexamination falls within the province of the Commissioner of Insurance.

Because the Blackburns' appeal, ably presented by counsel, was not frivolous, we deny Commerce's motion for appellate attorney's fees and costs. See *Avery* v. *Steele*, 414 Mass. 450, 455 (1993).