NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-809

ROGER KLIGLER

vs.

THE PAUL REVERE LIFE INSURANCE COMPANY & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Roger Kligler, brought this action for breach of contract, breach of the covenant of good faith and fair dealing, and violation of G. L. c. 93A against the defendants, The Paul Revere Life Insurance Company (Paul Revere) and Unum Group (Unum), following a dispute over the amount of Kligler's disability insurance benefits.  A summary judgment entered in favor of Paul Revere and Unum.  Kligler appeals, and we affirm.

Background.  The following facts are taken from the summary judgment record, construed in the light most favorable to

_____

    [1] Unum Group.

Kligler.  See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 680 (2015).

Paul Revere[2] issued a disability income policy to Kligler with an effective date of May 18, 1990.  The maximum benefit period under that policy was to age sixty-five.  Approximately ten months later, Kligler submitted an application requesting additional benefits.  As pertinent here, Kligler requested (1) gradually increasing monthly total disability benefits to $13,300 and (2) a lifetime total disability benefit rider.  The lifetime total disability benefit rider provided that lifetime total disability benefits would "start to pay on the later of: (a) [y]our 65th birthday; or (b) the date the [t]otal [d]isability benefit payable under [y]our [p]olicy ends."  On April 18, 1991, Paul Revere issued a new policy to Kligler that included the requested additional benefits.

In December 2014, Kligler submitted a claim to Paul Revere for total disability due to sickness.  Paul Revere approved the claim and began paying benefits to Kligler.  Beginning around January 2015, Paul Revere paid total disability benefits to Kligler in the amount of $13,300 per month.  When Paul Revere started paying total disability benefits to Kligler, he was

_____

[2] Paul Revere is a subsidiary of Unum.  Unum argues that Kligler's claims against it should have been dismissed because Kligler's contract was with Paul Revere, not Unum.  We need not reach the argument.

sixty-two years old.  Then, a few months after Kligler reached the age of sixty-five, Paul Revere stopped paying him total disability benefits and began paying him lifetime total disability benefits in the amount of $3,990 per month.

Discussion.  Kligler claims entitlement to two types of benefits per month, total disability benefits in the amount of $13,300, and lifetime total disability benefits also in the amount of $13,300.[3]

"The interpretation of an insurance policy is a question of law" (quotation omitted).  Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023).  If the language of a policy is unambiguous, the language "must be given its usual and ordinary meaning" (quotation omitted).  Id. at 493.  "We consider the language of an insurance policy as a whole, without according special emphasis to any particular part over another, and where possible, giving meaning and effect to every word" (quotation and citation omitted).  Id. at 492.

The language of Kligler's policy was unambiguous.  With respect to the total disability benefit, the policy provided as

---

[3] For the first time on appeal, Kligler also argues that his policy violates various Massachusetts statutes and regulations. The argument is waived.  See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 86 (2014).  Regardless, as Kligler explained in his reply brief, he pointed to the statutes and regulations as "a guidepost for measuring ambiguity" in the policy.  As we explain, infra, the policy was not ambiguous.

follows: "This benefit will begin on the [c]ommencement [d]ate. We will continue to pay it while [y]ou remain [t]otally [d]isabled. But in no event will [w]e pay beyond the [m]aximum [b]enefit [p]eriod." As noted above, the lifetime total disability benefit rider provided that the lifetime total disability benefit would "start to pay on the later of: (a) [y]our 65th birthday: or (b) the date the [t]otal [d]isability benefit payable under [y]our [p]olicy ends." Reading these provisions together, Kligler was not entitled to receive both benefits at the same time, as he could not start receiving lifetime total disability benefits until he stopped receiving total disability benefits.

Kligler's argument to the contrary focuses on two tables of benefits, which separately listed the amount payable under the total disability benefit and the amount payable under the lifetime total disability benefit. Kligler contends that because the tables listed two amounts payable, he was entitled to both amounts. This argument erroneously places special emphasis on the tables without giving meaning to the policy language itself. See Dorchester Mut. Ins. Co., 491 Mass. at 492.

Next, we must decide whether Kligler, after reaching age sixty-five, was entitled to total disability benefits or lifetime total disability benefits and the amount of those

4

benefits.  As noted, the policy provided that Paul Revere would not pay total disability benefits "beyond the [m]aximum [b]enefit [p]eriod."  The "[m]aximum [b]enefit [p]eriod" was defined as "the longest period of time [w]e will pay benefits during any [d]isability.  It is shown on the [p]olicy [s]chedule."  Thus, to determine when the total disability benefit stopped paying, we look to the policy schedule.  The maximum benefit period listed on the policy schedule was to age sixty-five but included an asterisk with the following information, capitalized:  "The maximum benefit period may change due to your age at total disability.  Please see policy schedule II."  Policy schedule II stated that, for total disabilities starting before age sixty-five, the maximum benefit period was "LIFETIME."

Kligler argues that the reference to "LIFETIME" means that Paul Revere agreed to pay total disability benefits for a maximum benefit period of Kligler's lifetime.  Paul Revere argues that the asterisk was inserted to show that Kligler had purchased the lifetime total disability rider, and that therefore his benefits did not terminate upon turning age sixty-five, but his lifetime benefits were to be calculated under the lifetime total disability rider.  We agree with Paul Revere. Prior to when Kligler purchased the lifetime total disability benefit, the maximum benefit period under his policy was to age

5

sixty-five.  It is only because of the lifetime total disability benefit that Kligler had any benefits after age sixty-five.  Thus, reading the policy as a whole, see Dorchester Mut. Ins. Co., 491 Mass. at 492, Kligler's total disability benefits stopped paying and his lifetime total disability benefits started paying when he reached age sixty-five.  See Aquino v. United Prop. & Cas. Co., 483 Mass. 820, 839 (2020) ("We . . . construe policies as a whole.  In so doing, the provisions of the policy concerning different coverage types should be read together in a way that does not render either coverage meaningless" [citation omitted]); Commerce Ins. Co. v. Blackburn, 81 Mass. App. Ct. 519, 521 (2012) ("[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties" [quotation omitted]).

Lastly, Paul Revere correctly calculated Kligler's monthly lifetime total disability benefits.  The rider unambiguously stated that the amount paid under the rider for total disability due to sickness was the amount shown on the policy schedule plus any cost of living benefit rider "multiplied by a factor.  The factor to be used will be based on [y]our age at the start of

6

[t]otal [d]isability which continues until age 65." For a total disability due to sickness beginning at age sixty-two, the factor was ".3." It is undisputed that the amount shown on Kligler's policy schedule, plus any cost of living benefit rider, was $13,300. Thus, Paul Revere correctly multiplied

7

$13,300 by .3 to determine that Kligler's monthly lifetime total disability benefits were $3,990.[4]

Judgment affirmed.

By the Court (Massing,
Singh & Grant, JJ.[5]),

Assistant Clerk

Entered: May 21, 2024.

---

[4] Kligler also argues that, if he is correct about his interpretation of the policy, we should vacate the summary judgment on his claim for violation of G. L. c. 93A and remand for a determination of whether Paul Revere engaged in unfair or deceptive acts or practices.  Given our conclusion that Paul Revere properly paid Kligler's claim, we need not reach the argument.

[5] The panelists are listed in order of seniority.